# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID LEON SCOTT, )<br>)<br>         Plaintiff, )<br>)<br>    v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social )<br>Security, )<br>)<br>         Defendant.[1] ) | 1:16CV1107 |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, David Leon Scott, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")) and both parties have moved for judgment (Docket Entries 11, 13); see also Docket Entry 12 (Plaintiff's Brief), Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of June 4, 2012. (Tr. 146-48.) Upon denial of that application initially (Tr. 51-60, 78-82) and on reconsideration (Tr. 61-73, 84-87), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 88-89). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 24-50.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-20.) The Appeals Council denied Plaintiff's request for review (Tr. 1-5, 8-9, 223-30), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2016.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 4, 2012, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: annular tear and degenerative disc disease of the lumbar spine at L4-5 and facet arthropathy of the lumbar spine.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

5. [Plaintiff] has the residual functional capacity to perform sedentary work . . . except would need the option to stand for a couple of minutes a couple of times per hour. [Plaintiff] can frequently climb ramps and stairs, balance, and stoop, and can occasionally kneel, crouch and crawl. [Plaintiff] cannot climb ladders, ropes or scaffolds.

. . .

6. [Plaintiff] is capable of performing past relevant work as a production coordinator. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] has also acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

7. [Plaintiff] has not been under a disability, as defined in the [] Act, from June 4, 2012, through the date of this decision.

(Tr. 15-20 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## **A. Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

**B. Assignment of Error**

In Plaintiff's sole issue on review, he asserts that he submitted new and material evidence to the Appeals Council which "competes with the evidence underlying [the] ALJ's decision, . . . [and about] which no fact finder has made any finding . . . or attempted to reconcile that evidence with the conflicting and supporting evidence in the record" and thus warrants remand under Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011). (Docket Entry 9 at 6). In particular, Plaintiff contends that "a job description from [Plaintiff's] employer, Pepsi Bottling Ventures, for his past work as a 'Pre-Sell Account Manager' (Tr. 225-26)" (id. at 3) and a consultative vocational opinion classifying that past work as the medium exertion "Driver, Sales Route" job, Dictionary of Occupational Titles ("DOT"), No. 292.353-010, 1991 WL 672567 (G.P.O. 4th ed. rev. 1991) (Tr. 229-30), conflict with the VE's testimony (which the ALJ adopted (see Tr. 19)) categorizing Plaintiff's past work into two separate jobs, "Driver, Sales Route" and the sedentary exertion job "Production Coordinator," DOT, No. 221.167-018, 1991 WL 671999 (Tr. 45), and opining that Plaintiff retained the RFC to perform the job of Production Coordinator as generally performed (Tr. 47). (Docket Entry 9 at 3-6.)

Plaintiff further maintains that "[a]t best the job [Plaintiff] was performing was a composite job . . . which entails duties that are performed at different exertional levels." (Id. at

8

4 (quoting Social Security Ruling 82-61, <u>Titles II and XVI: Past Relevant Work – The Particular Job or the Occupation as Generally Performed</u>, 1982 WL 31387, at *2 (1982) ("SSR 82-61") ("[C]omposite jobs have significant elements of two or more occupations and, as such, **have no counterpart in the [DOT]**. Such situations will be evaluated according to the particular facts of each individual case." (emphasis by Plaintiff)).) According to Plaintiff, "'if Plaintiff's past job was in fact a composite job, [Program Operations Manual System ("POMS") DI 25005.020B] would have prohibited the ALJ from deciding whether Plaintiff could perform his past relevant work as it is generally performed.'" (Id. at 5 (quoting <u>Shealy v. Colvin</u>, Civ. No. 8:13CV2383-RMG, 2015 WL 467726, at *13 (D.S.C. Feb. 4, 2015) (unpublished) (District Judge adopting recommendation of Magistrate Judge).)

Plaintiff additionally points out that "[t]he ALJ found, based on the testimony of the [VE], that [Plaintiff] ha[d] transferable skills from his past work but that testimony was based upon consideration by the [VE] of the wrong job[] [and that t]herefore, it is not known if [Plaintiff] did in fact acquire those skills and . . . the [VE's] testimony is not substantial evidence." (Id. (referencing Tr. 19, 47)). Plaintiff further deems the VE's (and ALJ's) error prejudicial, because, given Plaintiff's age, education, and previous work experience, Rule 201.14 of the Medical-Vocational Guidelines ("Grids") would direct a conclusion

9

of "Disabled," if Plaintiff did not acquire any transferable skills from his past work.[6] Plaintiff's contentions ultimately do not warrant relief.

"[T]he Appeals Council is required to consider new and material evidence relating to the period on or before the date of the ALJ decision in deciding whether to grant review." Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991). "Evidence is new within the meaning of [the Commissioner's regulations] if it is not duplicative or cumulative." Id. at 95-96; see generally Associate Comm'r of Hearings and Appeals, Soc. Sec. Admin., Pub. No. 70-074, Hearings, Appeals, Litig., and Law (LEX) Manual, § I-3-306(A) (1990). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)). Here, the Appeals Council considered Plaintiff's new evidence and incorporated it into the record (see Tr. 2, 4, 5, 223-30), but concluded that the evidence did "not provide a basis for changing the [ALJ's] decision" (Tr. 2).

---

[6] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'" Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

10

As an initial matter, a review of Plaintiff's descriptions of his past work (see Tr. 28-29, 169, 201) confirms that his prior job properly corresponds to the Driver, Sales Route job (medium exertion), rather than the Production Coordinator (sedentary exertion) job. Plaintiff indicated that, as a Pre-Sell Account Manager, he "stock[ed] drinks, buil[t] displays, r[o]de from store to store, . . . [and] lift[ed] and carr[ied] drinks to coolers and displays all day long." (Tr. 201.) Moreover, he reported that he lifted a maximum of 50 pounds, with frequent lifting of 25 pounds, and utilized machines, tools, and equipment, used technical knowledge and skills, and completed reports. (Id.; see also Tr. 169 (reflecting that Plaintiff "stock[ed] and order[ed] drinks").) The "Pre-Sell Account Manager" job description (Tr. 225-26) corroborates Plaintiff's descriptions, and indicates that the primary job duties include:

- Develop[ing] all assigned accounts relative to sales volume, market share, product distribution, space allocation, and customer service.

- Tak[ing] inventory and plac[ing] orders for future delivery to avoid out-of-stocks and reduction of out-of-date product.

- Rotat[ing] products, clean[ing] shelving, and stock[ing] product from the store's backroom onto the shelves and display[ing] in coolers and vending equipment.

- Sell[ing] and execut[ing] promotions, solicit[ing] placement of equipment and sell[ing] sufficient product inventory.

11

- Provid[ing] excellent customer service to assigned accounts; creat[ing] and maintain[ing] goodwill with all customers.

- Creat[ing] and utiliz[ing] point of sale signage.

- Complet[ing] required paperwork in an accurate and timely manner maintaining legibility.

- [Performing] other duties as assigned.

(Tr. 225.)

In contrast, the Production Coordinator job lists the following as the primary duties:

> Schedules and coordinates flow of work within or between departments of manufacturing plant to expedite production: Reviews master production schedule and work orders, established priorities for specific customer orders, and revises schedule according to work order specifications, established priorities, and availability or capability of workers, parts, material, machines, and equipment. Reschedules identical processes to eliminate duplicate machine setups. Distributes work orders to department, denoting number, type, and proposed completion date of units to be produced. Confers with department supervisors to determine progress of work and to provide information on changes in processing methods received from methods or engineering department. Compiles reports concerning progress of work and downtime due to failures of machines and equipment to apprise production planning personnel of production delays. Maintains inventory of materials and part needed to complete production.

DOT, No. 221.167-018, 1991 WL 6781999. With nearly all of the duties focusing on a manufacturing environment, the Production Coordinator job simply does not encompass any of Plaintiff's reported prior duties.[7] Thus, the record does not support the VE's

---

[7] Indeed, the Court should not find that Plaintiff's prior work even constituted a composite job consisting of duties of both the Driver, Sales Route job and the
(continued...)

12

conclusion that Plaintiff's prior work qualified as the Production Coordinator job (see Tr. 45) and, as the ALJ limited Plaintiff to a sedentary RFC (see Tr. 16), Plaintiff clearly did not retain the RFC to perform the medium exertion Driver, Sales Route job.

The Court nonetheless should deny relief because the new evidence lacks materiality, i.e., it presents no reasonable possibility of a different outcome, Wilkins, 953 F.2d at 95. The VE testified to three other sedentary occupations which Plaintiff had transferable skills to perform (see Tr. 47-48) and the ALJ adopted that testimony at step 5 of the SEP (see Tr. 19). Although the ALJ noted in her decision that the VE found Plaintiff had acquired transferable skills from the Production Coordinator job (see id. ("The [VE] testified that [Plaintiff's past relevant work as a production coordinator was skilled with a specific vocational preparation (SVP) code of 6 and required the following skills: information gathering and organization, service orientation, and time management."), the VE did not, in fact, so limit her testimony:

[ALJ]: [W]ould there have been skills that [Plaintiff] acquired in his past work that would be transferable to occupations at a light or sedentary level?

[VE]: Yes, your honor, just one second. Information gather in an organization, service orientation, time management, coordination,

---

[7] (...continued)
Production Coordinator job.

13

> and . . . those skills are transferable into
> other jobs.

(Tr. 47 (emphasis added).) Thus, the VE merely opined that Plaintiff acquired those skills from his "past work" (Tr. 47), which the VE had divided into two jobs - Driver, Sales Route and Production Coordinator (see Tr. 45). The Driver, Sales Route job carries an SVP of 3, which qualifies the job as semi-skilled. See DOT, No. 292.353-010, 1991 WL 672567. Transferable skills can flow from both skilled and semi-skilled past work. See, e.g., Elliott v. Astrue, No. 3:09CV185, 2010 WL 545963, at *7-8 (E.D. Va. Feb. 16, 2010) (unpublished).

Plaintiff's descriptions of his past work (see Tr. 28-29, 169, 201) (confirmed by the Pre-Sell Account Manager job description (Tr. 225-26)) make clear that the skills of information gathering, service orientation, time management, and coordination would reasonably flow from the performance of Plaintiff's semi-skilled past work, which he performed for a period of over ten years (see Tr. 29). Thus, the VE's testimony provides substantial evidence to support the ALJ's ultimate finding that Plaintiff possessed transferable skills to adjust to the semi-skilled, sedentary work cited by the VE (Tr. 47-48) and adopted by the ALJ (Tr. 19).

In sum, Plaintiff's sole issue on review fails to entitle him to relief.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 31, 2017